**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
SON LY and VINH TRAN,           )
                                )
            Plaintiffs,          )
                                )   Case No. 12-CV-1004 (EGS)
        v.                      )
                                )
SOLIN, INC., et al.,            )
                                )
            Defendants.          )
_____)

**MEMORANDUM OPINION**

     This case is before the Court on defendants Kanlaya
Intavong's and Paul Surachai's joint motion to dismiss,
defendant Pichet Laosiri's Motion to Dismiss, and defendant
Piwat Laosiri's Motion to Dismiss.  For the reasons explained
below, the motions will be **GRANTED**.

**I.   BACKGROUND**

     On June 19, 2012, plaintiffs filed a complaint against
seven defendants: Solin, Inc. ("Solin"), LPK, Inc. ("LPK"),
Kanlaya Intavong, Paul Surachai, Piwat Laosiri, Pichet Laosiri,
and Michael Strong.  Plaintiffs brought various state law causes
of action against defendants, including breach of fiduciary
duty, breach of contract, embezzlement of corporate funds,
conspiracy to defraud, false misrepresentation, negligence, and
"piercing the corporate veil."  Plaintiffs also sought a
declaratory judgment.

All of the individual plaintiffs and defendants are listed in the complaint as having addresses in the State of Virginia. The corporate defendants are incorporated in the District of Columbia.  In the jurisdictional allegations of the complaint, plaintiffs stated that "This Court has jurisdiction due to the parties [sic] are D.C. Corporations and all of the individual parties are from different jurisdictions; Both companies are registered to do business in D.C.; Mr. Tran has monetary contributions of $653,649.00 in shares of two companies." Though the complaint contained no further allegations of diversity, plaintiffs' counsel indicated on the accompanying Civil Cover Sheet that jurisdiction in this Court was based on diversity jurisdiction.  *See* ECF No. 1-2.

On July 5, 2012, plaintiffs filed an amended complaint to include two counts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO").  Plaintiffs allege that the defendant corporations Solin and LPK were "enterprises" within the meaning of RICO, 18 U.S.C. § 1961(4). Plaintiffs further allege that all individual defendants, who were employed by or associated with the corporate "enterprises," engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5), in violation of 18 U.S.C. § 1962(c).  Plaintiffs allege that the pattern of racketeering activity included the fraudulent execution of a promissory note

for stock in the defendant corporations.  Amend. Compl. ¶ 11.
In particular, plaintiffs state that defendant Kanlaya Intavong
"intentionally signed her name in the promissory note of selling
the stock to Vinh Tran as 'Kanlaya Surachai' knowing that Vinh
Tran did not know she was not married to Paul Surachai."  The
complaint further alleges that Intavong wrongfully denied that
the signature on the promissory note was not hers.  Plaintiffs
allege that defendants "conduct their business in such a manner
constitutes [sic] a 'pattern of racketeering activity'" within
the meaning of the RICO statute.  This claim only alleges that
defendants caused harm to plaintiff Vinh Tran; no facts are
alleged as to plaintiff Son Ly.

     In the second RICO count, plaintiffs allege that defendants
engaged in a conspiracy to engage in racketeering activity, in
violation of 18 U.S.C. § 1962(d).  Plaintiffs allege that
defendants "engaged in numerous overt and predicate fraudulent
racketeering acts in furtherance of the conspiracy, including
material misrepresentations and omissions designed to defraud
plaintiffs of money."  Amend. Compl. ¶ 25.  Specifically,
plaintiffs allege that Kanlaya Intavong and Paul Surachai "have
sought to and have engaged in the commission of and continue to
commit fraud in the sale of securities in violation of 18 U.S.C.
§ 1961(1)(D)."  Amend. Compl. ¶ 27.  It appears that this
reference is to the alleged stock transaction referred to in the

3

first RICO count.  At the conclusion of the conspiracy claim, plaintiffs add a seemingly unrelated allegation that Michael Strong, an attorney for Intavong and Surachai, knowingly drafted an unnamed agreement and induced Son Ly to sign that agreement in bad faith and in furtherance of the RICO conspiracy.  Amend. Compl. ¶ 32.  As a result of these alleged acts, plaintiffs state that Vinh Tran lost "all of the money . . . he paid for . . . 25% of the stocks in Solin, Inc. and LPK, Inc."  Amend. Compl. ¶ 29.

Defendants filed several motions to dismiss, each alleging that neither of the RICO counts stated a claim, that diversity jurisdiction did not exist as to the remaining state law claims, and that the Court should decline to exercise supplemental jurisdiction over those remaining claims.  *See* Def. Michael Strong's Mot. to Dismiss, ECF No. 20; Joint Mot. to Dismiss of Kanlaya Intavong and Paul Surachai, ECF No. 22; Def. LPK, Inc.'s Mot. to Dismiss, ECF No. 23; Def. Pichet Laosiri's Mot. to Dismiss, ECF No. 27; and Def. Piwat Laosiri's Mot. to Dismiss, ECF No. 28.

Pursuant to the request of the plaintiffs, the Court agreed to a stay of 60 days to permit the parties to discuss settlement.  A settlement was not reached and plaintiffs were directed to respond to the motions to dismiss by November 13, 2012.  On that date, plaintiffs moved to voluntarily dismiss

without prejudice defendants LPK and Solin pursuant to Rule 41(a).  Also on that date, plaintiffs responded to the motions to dismiss filed by Surachai, Intavong, Piwat Laosiri, and Pichet Laosiri.  On November 20, 2012, the parties filed a stipulation of dismissal with prejudice as to defendant Michael Strong.

As a result of the voluntary dismissal of several plaintiffs, only several motions remain before the Court: defendants Kanlaya Intavong's and Paul Surachai's joint motion to dismiss, defendant Pichet Laosiri's Motion to Dismiss, and defendant Piwat Laosiri's Motion to Dismiss.  Also before the Court is former defendant LPK, Inc.'s opposition to plaintiffs' voluntary dismissal of their claims against it, in which LPK, Inc. requests the imposition of Rule 11 sanctions against plaintiffs.  LPK argues that plaintiffs' complaint was brought in bad faith and in violation of Rule 11 by alleging diversity jurisdiction where none existed and by raising frivolous RICO claims to establish federal subject matter jurisdiction.

## II.  STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction and "possess only that power conferred by [the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs,* 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (*quoting Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). "There is a

presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 182-83 (1936)). When it perceives that subject matter jurisdiction is in question, the Court should address the issue *sua sponte.* *See Prunte v. Univ. Music Group*, 484 F. Supp. 2d 32, 38 (D.D.C. 2007) (citing *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (noting that, because subject matter jurisdiction "goes to the foundation of the court's power to resolve a case, [] the court is obliged to address it *sua sponte*")).

In a suit between private litigants, a plaintiff generally demonstrates the existence of subject matter jurisdiction by establishing federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. "A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citing *Bell v. Hood,* 327 U.S. 678, 681-85 (1946)). Where the district court's jurisdiction is dependent solely on the diversity of citizenship between the parties, there must be "complete diversity," meaning that no plaintiff may have the

6

same citizenship as any defendant.  *E.g., Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74 (1978).

In assessing whether a complaint sufficiently alleges subject matter jurisdiction, the Court accepts as true the allegations of the complaint, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and liberally construes the pleadings such that the plaintiff benefits from all inferences derived from the facts alleged, *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C. Cir. 2004).  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (internal citations, quotation marks and brackets omitted).  When the inquiry focuses on the Court's power to hear the claim, "the Court may give the plaintiff's factual allegations closer scrutiny and may consider materials outside the pleadings."  *Logan*, 357 F. Supp. 2d at 153 (citing Fed. R. Civ. P. 12(b)(1); *Herbert v. Nat'l Academy of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992); *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

"A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.,* if it is immaterial and made solely for the purpose of obtaining jurisdiction or it

is wholly insubstantial and frivolous." *Arbaugh*, 546 U.S. 500, 513 n. 10 (2006) (citations omitted); *accord Tooley v. Napolitano,* 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly,* 39 F.3d 328, 330 (D.C. Cir. 1994) (a complaint is subject to dismissal on jurisdictional grounds when it is "patently insubstantial," presenting no federal question suitable for decision); *see Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 701 (2d Cir. 2000) (quoting *Bell v. Hood,* 327 U.S. 678, 682-83 (1946)).

### III. DISCUSSION

The threshold issue before this Court is whether it has subject matter jurisdiction over the plaintiffs' claims.  For the reasons explained below, the Court concludes that it does not, and will dismiss plaintiffs' complaint.

### A. Diversity Jurisdiction

As discussed above, plaintiffs initially indicated on the civil cover sheet filed with their complaint that the Court has diversity jurisdiction over this action, although plaintiffs did not invoke 28 U.S.C. § 1332.  In the complaint, plaintiffs stated only that "[t]his Court has jurisdiction due to the parties [sic] are D.C. Corporations and all of the individual parties are from different jurisdictions; Both companies are registered to do business in D.C.; Mr. Tran has monetary contributions of $653,649.00 in shares of two companies."  This

jurisdictional allegation does not properly invoke diversity jurisdiction.

Moreover, it appears from the face of the complaint that diversity jurisdiction did not exist at the time the complaint was filed, nor does it currently exist.  Indeed, there is no diversity whatsoever between any of the individual plaintiffs and defendants, all of whom are described in the complaint as having addresses in the State of Virginia.  The corporate defendants, who have since been voluntarily dismissed, are incorporated in the District of Columbia.  Their presence or absence in the litigation has no effect on diversity jurisdiction, however, since 28 U.S.C. § 1332 requires "complete diversity" between the plaintiffs and defendants.  *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Because there are plaintiffs and defendants from the State of Virginia, diversity jurisdiction does not exist in this action.

### B. Federal Question Jurisdiction

Because diversity jurisdiction is not present in this case, plaintiffs must establish that federal question jurisdiction exists under 28 U.S.C. § 1331.  *See Arbaugh*, 546 U.S. at 513 n. 10 (2006).  "A plaintiff properly invokes § 1331 jurisdiction when [he] pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Id*. (citing *Bell,* 327 U.S. at 681-85).  In this case, plaintiffs' supplemental

RICO claims are the only claims brought under federal law and are therefore the only basis under which federal question jurisdiction could be properly invoked.

1. Count IX: Violation of RICO, 18 U.S.C. § 1962(c)

In order to state a claim for a violation of the RICO statute, a plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  To show such a pattern, RICO requires at least two predicate criminal racketeering acts over a ten-year period. *See* 18 U.S.C. § 1961(5).  The predicate acts must be among the criminal acts listed in Section 1961(1).  The Supreme Court has further ruled that these predicate acts must show elements of relatedness and continuity.  *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).  In other words, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.*  In determining whether this continuous pattern is established, there are a number of factors to be considered: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity . . . as they bear on the separate questions of continuity and relatedness." *Edmondson &*

10

*Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265
(D.C. Cir. 1995).

Count IX of plaintiffs' complaint wholly fails to set forth
a RICO claim under Section 1962(c). Plaintiffs have alleged
only one predicate act, though the statute requires at least
two.[1] *See* 18 U.S.C. § 1961(5). Having alleged only one act, it
is impossible for plaintiffs to establish the other required
elements of relatedness and continuity, nor did plaintiffs make
any attempt to do so. *See H.J. Inc.,* 492 U.S. at 239; *Edmondson
& Gallagher,* 48 F.2d at 1265 (allegation of single scheme,
single injury, and few victims makes it virtually impossible for
plaintiffs to state a RICO claim). Plaintiffs have also failed
to allege a threat of continued criminal activity, since the
complaint refers only to one alleged past act. *See H.J. Inc.,*
492 U.S. at 239.

---

[1] The Court notes without deciding that plaintiffs may have also
failed to allege a predicate act that falls within the purview
of RICO because plaintiffs allege that defendants committed
securities fraud. As argued in the motion to dismiss of
Surachai and Intavong, the Private Securities Litigation Reform
Act, 18 U.S.C. § 1964(c) exempted securities fraud from the list
of qualifying RICO predicate acts. Plaintiffs respond to this
argument by stating that the shares in LPK, Inc. and Solin, Inc.
are "not regulated by the 1933 Security [sic] Act and the 1934
Security [sic] Exchange Act." Pls.' Combined Opp. to Mots. to
Dismiss at 10. Because there is insufficient information in the
record for the Court to decide this issue and because
plaintiffs' RICO claims fail for other reasons discussed herein,
the Court does not reach the issue of whether plaintiffs have
sufficiently alleged a predicate act under RICO.

2. <u>Count X: Conspiracy to Violate RICO, in violation of 18</u>

   <u>U.S.C. § 1962(d)</u>

   Plaintiffs' second RICO count fares no better than their

first.  Count X alleges a conspiracy to violate Section 1962(c),

in violation of Section 1962(d). Section 1962(d) provides that

it is "unlawful for any person to conspire" to violate a

substantive RICO provision.  To state a Section 1962(d)

conspiracy, the complaint must allege that (1) two or more

people agreed to commit a subsection (c) offense, and (2) a

defendant agreed to further that endeavor.  *RSM Construction*

*Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043,

1047-48 (D.C. Cir. 2012).

   In Count X, plaintiffs merely incorporate by reference

their allegations of a single-event RICO violation based on

alleged securities fraud committed by Intavong and Surachai.[2]

For the reasons explained above, plaintiffs have failed to set

---

[2] In this claim, plaintiffs also add an allegation of wrongdoing
as to Michael Strong, attorney for Intavong and Surachai.
Plaintiffs allege that Strong "knowingly drafted an agreement
and induced Mr. Ly to sign on [sic] the agreement.  [Strong]
should not and could not in good faith to ask [sic] Mr. Ly to
sign the agreement of January 20, 2012.  [Strong] also advised
Mr. Tran on two other occasions.  [Strong's] acts for the sake
of Solin and LPK, Intavong and Surachai constituted a RICO
violation."  Amend. Compl. ¶ 32.  These allegations do not state
a claim for RICO for several reasons, including that they do not
set forth a predicate act, nor do they establish the elements of
relatedness and continuity.  Accordingly, this allegation also
cannot set forth the basis for a RICO conspiracy.  In any event,
all claims against Strong have been dismissed with prejudice and
are not properly before this Court. *See* ECF No. 35.

forth any claim for a RICO violation.  Accordingly, they are
unable to establish that "two or more people agreed to commit a
[RICO violation]," which is necessary to state a claim for a
RICO conspiracy.  Furthermore, other than plaintiffs' conclusory
allegations, plaintiffs have not set forth any allegations that
any defendants agreed to further any such RICO conspiracy.
Accordingly, plaintiffs have failed to state a claim for a RICO
conspiracy against any of the defendants.  *See Edmondson &
Gallagher,* 48 F.3d at 1265 ("Further, as the allegations provide
no basis for inferring any conspiracy broader than the alleged
scheme itself, the § 1962(d) claim fails as well; there is no
conspiracy to violate any of the provisions of subsection (c).")
(internal quotation marks omitted).

3. <u>Plaintiffs' RICO Claims Fail to Invoke this Court's Subject
   matter Jurisdiction</u>

The Court finds that plaintiffs' RICO claims are subject to
dismissal for lack of subject matter jurisdiction.  This is
plainly not a RICO case; rather, plaintiffs' claims appear to
set forth, at most, a state-law business dispute falling
squarely within the jurisdiction of the District of Columbia
courts.  Plaintiffs' conclusory allegations of "racketeering"
are simply not colorable and do not present a federal question
for this Court's decision.  *See Arbaugh*, 546 U.S. at 513 n. 10
(2006) ("A claim invoking federal-question jurisdiction under 28

U.S.C. § 1331 . . . may be dismissed for want of subject matter jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of obtaining jurisdiction . . . ."); *accord Tooley,* 586 F.3d at 1009 (quoting *Best*, 39 F.3d at 330 (a complaint is subject to dismissal on jurisdictional grounds when it is "patently insubstantial," presenting no federal question suitable for decision)); *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (finding that plaintiff's RICO theory was "so feeble, so transparent an attempt to move a state-law dispute to federal court . . . that it [did] not arise under federal law at all"). Accordingly, Counts IX and X of plaintiffs' complaint are **DISMISSED** with prejudice for lack of subject matter jurisdiction.

## C. Supplemental Jurisdiction

In view of the Court's dismissal of the federal claims, and the lack of diversity jurisdiction in this matter, the Court must determine whether to dismiss the remaining state law claims. District courts are given supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

14

The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience and fairness to litigants." *Id.* Nonetheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see Edmondson & Gallagher*, 48 F.3d at 1267.

Here the factors clearly weigh against retention of this case. This Court has handled little in the case beyond the current Motions to Dismiss and has not dealt at all with the supplemental state claims. *Compare Schuler v. PricewaterhouseCoopers, LLP,* 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained supplemental jurisdiction over state claims where it had "invested time and resources" in the case). Finally, Plaintiff will not be prejudiced because 28 U.S.C. 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. *See Shekoyan v. Sibley*

15

*Int'l,* 409 F.3d 414, 419 (D.C. Cir. 2005) (finding that because of this tolling, dismissal of the pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system.") (internal citation omitted).

Accordingly, the remaining claims in this case will be **DISMISSED** without prejudice.

### D. Leave to Amend

In the concluding paragraph of their consolidated opposition to defendants' motions to dismiss, plaintiffs state that "[i]f there is [sic] any RICO pleading deficiencies, Plaintiffs should be given a chance to correct the deficiencies by amendment." Pls.' Opp. to Defs.' Mots. to Dismiss at 18, ECF No. 34. Plaintiffs did not separately move for leave to amend, nor did plaintiffs include a proposed amended complaint.

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a matter of course within a prescribed time period. *See* Fed. R. Civ. P. 15(a)(1). When a party seeks to amend its pleadings outside that time period or for a second time, it may do so only with the opposing party's written consent or the district court's leave. *See* Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court, but leave "should be freely given unless there is a good

reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996). Because plaintiffs have already amended their pleadings once, they may only do so with the consent of the plaintiffs or by leave of the Court.

Under the Local Rules of this Court, a "motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended."  Local Civ. R. 15.1. Critically, a party seeking leave to amend must file a motion to amend before a court can consider the issue. *Confederate Mem. Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) ("[A] bare request in opposition to a motion to dismiss[,] without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a).").

Plaintiffs' request to amend their RICO claims, made in passing at the end of their opposition to defendants' motions to dismiss, will be denied.  Plaintiffs failed to properly file a motion for leave to amend and have made no indication to the Court of the grounds for any such amendment.  Rather, plaintiffs are hedging their bets: they state that *if* the Court were to find that there are deficiencies in plaintiffs' RICO claims, *then* plaintiffs will submit an amended complaint.  This approach not only violates the Local Rules but deprives the Court of the

ability to determine whether leave should be denied on grounds of futility or otherwise.  *See Confederate Mem. Ass'n, Inc.*, 995 F.2d at 299.  Accordingly, because plaintiffs have failed to properly move for leave to amend and have failed to provide the Court with their proposed amended claims, plaintiffs' request for leave to amend is **DENIED**.

**E. Rule 11**

On November 13, 2012, plaintiffs voluntarily dismissed defendant LPK from this action.  ECF No. 32.  LPK had moved to dismiss plaintiffs' complaint and plaintiffs filed a notice of voluntarily dismissal on the day that their opposition to LPK's motion would have been due.  On November 28, 2012, LPK filed an opposition to plaintiffs' voluntary dismissal, arguing that plaintiffs are subject to sanctions under Federal Rule of Civil Procedure 11 because plaintiffs' claims were brought in bad faith.

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990) (internal quotation marks omitted).  The rule's text provides, in relevant part, that

> [b]y presenting to the court a pleading, written
> motion, or other paper ... an attorney or
> unrepresented party certifies that to the best of the
> person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances:
> ...
>
>   (2) the claims, defenses, and other legal contentions
> are warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing
> existing law or for establishing new law.

Fed. R. Civ. P. 11(b).

Rule 11 permits courts to award sanctions for violations of
Rule 11(b).  *See* Fed. R. Civ. P. 11(c)(1) ("If, after notice and
a reasonable opportunity to respond, the court determines that
Rule 11(b) has been violated, the court may impose an
appropriate sanction on any attorney, law firm, or party that
violated the rule or is responsible for the violation.").  "'The
test [for sanctions] under Rule 11 is an objective one: that is,
whether a reasonable inquiry would have revealed that there was
no basis in law or fact for the asserted claim.  The Court must
also take into consideration that Rule 11 sanctions are a harsh
punishment, and what effect, if any, the alleged violations may
have had on judicial proceedings.'"  *Scruggs v. Getinge USA,
Inc.,* 258 F.R.D. 177, 180–81 (D.D.C. 2009) (quoting *Sharp v.
Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 100 (D.D.C.
2007)).

Rule 11 sets forth specific procedural requirements for a
party moving for sanctions.  The motion "must be made separately

from any other motion and must describe the specific conduct
that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).
The motion must be served on the nonmovant "but it must not be
filed or be presented to the court if the challenged paper,
claim, defense, contention, or denial is withdrawn or
appropriately corrected within 21 days. . . ." *Id*. Here, it
appears that LPK did not fully satisfy this requirement.  In its
motion, LPK represents that "[l]etters were written and phone
calls were made that the corporations were not proper party
defendants.  Indeed, more than 21 days after filing the Motion
to Dismiss, Plaintiffs refused to remove the offending
pleadings."  LPK's Opp. to Pls.' Voluntary Dismissal at 4, ECF
No. 38.  This representation does not establish that LPK made a
separate motion, served it upon plaintiffs, and having received
no resolution of the Rule 11 issue within 21 days, filed the
motion with the Court.

Even though LPK's motion fails to meet the requirements of
Rule 11, the Court itself has the authority to impose Rule 11
sanctions *sua sponte*.  Fed. R. Civ. P. 11(c)(1)(B).  This
inherent power, as the D.C. Circuit recognized, "guard[s]
against abuses of the judicial process." *Shepherd v. Am. Board.
Co.,* 62 F.3d 1469, 1472 (D.C. Cir. 1995).  In this regard, Rule
11 serves the purpose of protecting the Court from "frivolous
and baseless filings that are not well grounded, legally

untenable, or brought with the purpose of vexatiously
multiplying the proceedings." *Cobell v. Norton,* 211 F.R.D. 7,
10 (D.D.C. 2002) (quoting *Cobell v. Norton,* 157 F. Supp. 2d 82,
86 n. 8 (D.D.C. 2001)).  If the Court determines that the motive
and intent of the offending party is to harass the other party,
or that a party has otherwise violated Rule 11(b), it has the
inherent power to consider a Rule 11 sanctions motion *sua sponte*
by issuing an order directing the offending party to show cause
why it has not violated Rule 11(b).  Fed. R. Civ. P.
11(c)(1)(B).[3]  Although the Court has found it lacks subject
matter jurisdiction over plaintiffs' claims, the Court may
retain jurisdiction over the issue of Rule 11 sanctions.  *See*
*Willy v. Coastal Corp.*, 503 U.S. 131, 138-39 (1992).  Likewise,
plaintiffs' voluntary dismissal of certain claims against
certain defendants does not prevent the Court from considering
claims made against those defendants in connection with Rule 11
sanctions.  *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384
(1990) (district court may enforce Rule 11 even after a

---

[3] When exercising its discretion and imposing sanctions *sua
sponte*, the court is not required to provide a party with the
safe harbor period, as is required in Rule 11(c)(1)(A). *Compare*
Fed. R. Civ. P. 11(c)(1)(B) (containing no explicit safe harbor
provision) *with* Fed. R. Civ. P. 11(c)(1)(A) (containing an
explicit safe harbor provision)*; see, e .g., Elliot v. Tilton,*
64 F.3d 213, 216 (5th Cir.1995) (distinguishing between the safe
harbor required when sanctions are requested by motion and the
absence of the safe harbor requirement when the court is acting
sua sponte).

plaintiff files a notice of voluntary dismissal under Rule 41(a)(1)).

At this stage of the litigation, it appears to the Court that plaintiffs failed to conduct the reasonable inquiry required by Rule 11(b) when they sought to invoke the Court's subject matter jurisdiction. Although the common citizenship between all individual plaintiffs and defendants was plain from the face of the complaint, plaintiffs nonetheless sought to invoke diversity of citizenship as the initial basis for the Court's subject matter jurisdiction. Counsel was obligated, however, to make reasonable inquiry into the basis for diversity jurisdiction. *See Weisman v. Rivlin*, 598 F. Supp. 724, 724 (D.D.C. 1984) (awarding sanctions and stating that counsel "had an obligation to make a reasonable inquiry into the basis for diversity. The Court finds that it was not reasonable to overlook the citizenship of counsel's own client . . . ."); *Rowland v. Fayed*, 115 F.R.D. 605, 607 (D.D.C. 1987) (awarding sanctions for filing of complaint invoking diversity jurisdiction where no such jurisdiction existed and citizenship of all parties was known to counsel when complaint was filed). Complete diversity between the parties was so clearly lacking that even the most cursory of legal inquiries would have uncovered this error. *See, e.g.*, Diversity of Citizenship, The Free Legal Dictionary, http://legal-

22

dictionary.thefreelegaldictionary.com/Diversity+Jurisdiction (last visited December 17, 2012).

Although counsel's meritless invocation of diversity jurisdiction would have been enough to risk Rule 11 sanctions, counsel compounded her initial error by subsequently amending the complaint to add two wholly insubstantial civil RICO claims in an effort to invoke federal question jurisdiction.  The RICO claims were not warranted by existing law or a "nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law."  *See* Fed. R. Civ. P. 11(b)(2).  It appears to the Court at this time that the RICO claims were frivolously filed solely to invoke the jurisdiction of this Court and sanctions under Rule 11 may be warranted.  *See Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003) (directing plaintiff to show cause why he should not be sanctioned for frivolous RICO claim filed solely to invoke federal court's jurisdiction).

Because the issue of Rule 11 is being raised *sua sponte* by this Court, sanctions will not be imposed at this time.  Rather, an Order will be issued contemporaneously herewith affording an opportunity for counsel for plaintiffs to show cause why sanctions pursuant to Rule 11 should not be issued.

IV.   CONCLUSION

For the reasons explained above, the Court finds that it lacks subject matter jurisdiction over this action. Accordingly, Counts IX and X of the complaint are hereby **DISMISSED** with prejudice; Counts I through IIX are **DISMISSED** without prejudice; and leave to amend the complaint is hereby **DENIED**.   The Court will retain jurisdiction over the case solely to resolve the issue of sanctions under Rule 11.   An appropriate Order accompanies this Memorandum Opinion.

Signed:        **Emmet G. Sullivan**
               **United States District Judge**
               **December 17, 2012**